UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-mc-60040-CIV-DIMITROULEAS/SNOW

CONSUMER FINANCIAL
PROTECTION BUREAU,

      Plaintiff,
v.

THE NATIONAL COLLEGIATE
MASTER STUDENT LOAN TRUST, *et al.*,

      Defendants,


WATERFALL EDEN MASTER FUND, LTD.;
WATERFALL DELTA OFFSHORE MASTER
FUND, LP; WATERFALL SANDSTONE
FUND, LP; BALDR SHERWOOD FUND, INC.;
ONE WILLIAM STREET CAPITAL MASTER
FUND, LTD.; OWS ABS MASTER FUND II, LP;
OWS COF I MASTER, LP; OWS CREDIT
OPPORTUNITY I, LLC; OWS GLOBAL FIXED
INCOME FUND (USD-HEDGED), LTD.;
LIBREMAX MASTER FUND, LTD.;
 LIBREMAX VALUE MASTER FUND, LTD.;
LIBREMAX MSW FUND, LTD.;
AG MORTGAGE VALUE PARTNERS
MASTER FUND, L.P.; AG TCDRS, L.P.;
AG PISGAH, L.P.; AG SUPER RMBS, LLC;
AG OPPORTUNISTIC WHOLE LOAN
SELECT, L.P., *et al.*,

      Intervenors.
_____/

**<u>ORDER</u>**

      THIS CAUSE is before the Court on the Objections To and Opposed Motion to

Quash Non-Party Subpoena, filed by Boston Portfolio Advisors, Inc. (BPA) (ECF No. 1), and the

Expedited Motion to Transfer Motion to Quash Subpoena (ECF No. 7) which was filed by certain

Intervenors described as the "Objecting Noteholders."[1] These motions were referred to Magistrate Judge Lurana S. Snow by the Honorable William P. Dimitrouleas. (ECF No. 4)

## I. BACKGROUND

On January 4, 2019, BPA initiated this action by seeking to quash a subpoena served on BPA in relation to an action filed in September 2017 in the United States District Court for the District of Delaware (Case No. 17-cv-01323(MN)). The Plaintiff in the Delaware action is the Consumer Financial Protection Bureau (CFPB), which sued fifteen National Collegiate Student Loan Trusts seeking, *inter alia*, injunctive relief, restitution, and civil penalties for alleged violations of Federal consumer financial law in connection with the Defendants' servicing and collection of private student loan debt. Delaware Complaint (ECF No. 13), at ¶1.

The Defendant Trusts were created between 2001 and 2007 as Delaware statutory trusts. Id., at ¶9. According to the pleading of the CFPB, the Defendant Trusts were owner-directed and hired loan servicers to collect on defaulted student debt across the country by filing 94,046 collection lawsuits. Id., at ¶¶ 3, 11-13. Those lawsuits relied on false affidavits and inadequate documentation to establish ownership of the debt, or attempted to collect on debt after the time had expired to do so, id., at ¶¶ 3, 19-20, 24-58, in violation of 12 U.S.C. §§ 5531, 5536(a)(1)(B), id., at Counts I-V. On the same day that the CFPB filed the action it also sought approval of a proposed consent judgment with the Defendant Trusts. See Memorandum Opinion dated October 19, 2018, and Motion to Approve Consent Judgment. (ECF Nos. 14-1, 14-2)

The filing of the proposed consent judgment quickly was challenged by entities holding interests in the Trusts, arguing that they had not agreed to entry of the consent judgment.

---

[1] The Objecting Noteholders are Waterfall Eden Master Fund, Ltd.; Waterfall Delta Offshore Master Fund, LP; Waterfall Sandstone Fund, Lp; Baldr Sherwood Fund, Inc.; One William Street Capital Master Fund, Ltd.; OWS ABS Master Fund II, LP; OWS Cof I Master, LP; OWS Credit Opportunity I, LLC; OWS Global Fixed Income Fund (USD-Hedged), Ltd.; Libremax Master Fund, Ltd.; Libremax Value Master Fund, Ltd.; Libremax MSW Fund, Ltd.; AG Mortgage Value Partners Master Fund, L.P.; AG TCDRS, L.P.; AG Pisgah, L.P.; AG Super RMBS, LLC; AG Opportunistic Whole Loan Select, L.P.

Specifically, according to the Motion to Transfer filed by the Objecting Noteholders, the Defendant Trusts had "issued notes that entitle investors to cash flows from the student loans," and "issued residual interests in the form of certificates, which entitle their holders to engage in certain activities in connection with the Trusts." (ECF No. 7, at 4) The Objecting Noteholders own approximately $1.4 billion in notes issued by the Trusts. Id. (According to BPA, the Trusts securitized student loans valued at approximately $15 billion. Opposition to Motion to Transfer (ECF No. 14), at 3.)

In 2009, the Defendant Trusts' residual interests were acquired by a group of entities known as VCG, whose principal was Donald Uderitz. Id. Mr. Uderitz and his entities "engaged in various efforts to attempt to improperly control the Trusts, including ... causing a law firm, McCarter & English LLP ... to enter into" the proposed consent judgment. Id. Mr. Uderitz and his entities also "purport[ed] to install an entity, jointly owned by [Mr. Uderitz's entities] and BPA" as a servicer for the Defendant Trusts. Id.

The Objecting Noteholders and several others sought to intervene in the Delaware action, including the loan servicers for the Defendant Trusts, an insurer (Ambac Assurance Corporation), Wilmington Trust Company as Owner Trustee of the Trusts, GSS Data Services, Inc., as Administrator of the Trusts, U.S. Bank Association as Indenture Trustee, and others. See Memorandum Opinion dated October 19, 2018. (ECF No. 14-1) The court in Delaware granted the requests to intervene, finding that "significant questions exist regarding the authority of prior counsel to sign the [proposed consent judgment] on behalf of the Trusts, and over the objection of the Owner Trustee." Id.

The Delaware court had entered a Scheduling Order, reflecting its decision to bifurcate consideration of the Proposed Consent Judgment into two phases, specifying that in Phase One, the Court would consider two threshold issues:

> 1. Whether the law firm of McCarter & English had the authority to execute the Proposed Consent Judgment on behalf of the Defendants under the Trust Related Agreements and applicable law; and

> 2. Whether - authority aside - it was improper or (in violation of the Trust Related Agreements) [sic] for McCarter & English to enter into the Proposed Consent Judgment.

Scheduling Order. (ECF No. 1-2, at 25-26) The court noted that if it found for Plaintiff as to the two Threshold Issues, then the parties, including the Intervenors, were to file a joint proposal for proceeding with Phase Two. Id. According to a submission of the parties before the Court in Delaware, regarding a proposed briefing schedule for a motion to approve the proposed consent judgment, Phase Two would address whether approval of the proposed consent judgment was fair and reasonable, and the public interest would not be disserved. (ECF No. 7-4)

After entry of the Scheduling Order, the Objecting Noteholders and other Intervenors served ten subpoenas on non-parties in five jurisdictions seeking information relating to the development of the proposed consent judgment. According to the Objecting Noteholders, BPA was subpoenaed because it performed an audit on the Trusts "that was used (in whole or in part) as a basis for the proposed consent judgment." (ECF No. 7, at 3)

BPA is a financial consulting firm based in Fort Lauderdale, Florida. Declaration of Thomas Glanfield, President and CEO of BPA (ECF No. 1-2). BPA was served on December 21, 2018. According to the subpoena, BPA was to appear in Miami on February 15, 2019, and provide, for the period from January 1, 2012, to the present: "[a]ll documents and communications concerning the Investigation, the Action, and the Proposed Consent Judgment that related to the Threshold Issues set forth in the Scheduling Order." Subpoena, Schedule B (ECF No. 1-2, at 8, 12) The subpoena specifies that such documents include:

> 1. Any information or communications exchanged between the CFPB, on the one hand, and VCG, McCarter & English, Chaitman LLP, DiCello Levitt & Casey LLC, BPA, or any other entiteis representing or purporting to represent the [Trusts] or VCG, or any of their principals or representatives, on the other hand;
>
> 2. Any information or communications exchanged between BPA, on the one hand, and VCG, Chaitman LLP, McCarter & English, DeCello Levitt & Casey LLC, or any other entities representing or purporting to represent the [Trusts] or VCG, or any of their principals or representatives, on the other hand;

> 3. Any work performed by BPA in connection with the Proposed Consent Judgment, including any audits of the [Trusts] or in connection with the Proposed Consent Judgment;
>
> 4. The nature of BPA's engagement with the [Trusts], including the extent to which BPA was engaged to advance the interests of VCG, the [Trusts], the Noteholders and Ambac; and
>
> 5. The negotiation of the Proposed Consent Judgment.

Id. The subpoena also seeks testimony as to:

> 1. The Proposed Consent Judgment
>
> 2. The nature of BPA's engagement with the [Defendant Trusts], including the extent to which BPA was engaged to advance the interests of VCG, the [Trusts], the Noteholders and Ambac; and
>
> 3. Any work performed by BPA in connection with any audits of the [Trusts] or in connection with the Proposed Consent Judgment.

Subpoena, Schedule A. (ECF No. 1-2, at 8, 11)

According to BPA, to comply with the subpoena's broad request for documents "would require at least one professional to review thousands of documents in order to determine whether or not they are responsive to the listed requests," and a third party vendor would need to be engaged to assist with the electronic review of these documents. Declaration of Thomas Glanfield (ECF No. 1-2), at ¶ 12. BPA also states that it was represented by McCarter & English, LLP, since 2016 and continuing through 2018, and the representation involved matters concerning VCG Securities, LLC, such that any documents responsive to the subpoena would need to be reviewed to protect attorney-client privileges and work-product. Id., at ¶¶ 13-14. BPA asserts that compliance with the subpoena would cost in excess of $150,000 in lost earnings, attorney's fees and additional costs. Id., at ¶ 17.

On January 16, 2019, the Objecting Noteholders filed an expedited motion to transfer BPA's Motion to Quash to the Delaware court, the court which issued the subpoena. (ECF No. 7) BPA objects to the transfer, arguing that it is entitled to have its Motion to Quash heard before this Court, pursuant to Rule 45(d), Fed. R. Civ. P., which provides that motions to quash a subpoena be

heard in the district where compliance is required, absent exceptional circumstances justifying transfer, or the consent of the party from whom discovery is sought.

## II. DISCUSSION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, a subpoena must issue from the court where the action is pending, and enforcement of the subpoena is before the court where compliance is required. Fed. R. Civ. P. 45(a)(2), (d).[2] After amendments to Rule 45 in 2013, the Rule provides that the Court "may transfer a motion under this rule to the [court issuing the subpoena] if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

The Advisory Committee Notes to Rule 45(f) offer the following guidance as to what constitutes "exceptional circumstances":

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) Advisory Committee's Note (2013).

BPA argues that because it is located in Florida, it should not be forced to litigate its Motion to Quash, and objections to, the subpoena in Delaware. The Court finds, however, that the resolution of BPA's Motion to Quash will likely require analysis of objections based on attorney-client privilege and work product, which issues are or will be before the Court in Delaware and will

---

[2]"For example, on timely motion, the court for the district where compliance is required must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

involve questions of Delaware law on privilege.[3] Objections based on privilege, lack of relevance, and undue burden, require the Court to make a determination as to the relevance of the requested materials. Such determinations, if made by courts in different districts, have the "real potential for disruption in the underlying litigation." Exist, Inc. v. Shoreline Wear, Inc., No. 15-61917-MC-DIMITROULEAS/Snow, 2015 WL 13694080 (S.D. Fla. Oct. 16, 2015) (finding exceptional circumstances justified transfer of motion to quash subpoena).

The Court finds that BPA's argument that its "objections and legal protections have nothing to do with the issues in the underlying litigation" rings hollow. (ECF No. 14, at 7) On April 18, 2018, BPA filed an action in Broward County, Florida, against the Trusts for their failure to compensate BPA $327,961.57 for services rendered. State Court Complaint (Case No. 18-009295). (ECF No. 7-2) BPA obtained an Order Granting BPA's Motion for Summary Judgment in that action, dated November 15, 2018. (ECF No. 7-3) According to the State Court Complaint, BPA was engaged in August 2015 to perform an audit of the student loans owned by the Trusts, with approximately $12 billion of outstanding loan balances, with the objective of "assess[ing] the quality of loan servicing and its requirements" under applicable documents governing servicing of the loan portfolio owned by the Trusts. (ECF No. 7-2) When the CFPB commenced its investigation of the Trusts, BPA "was requested to assist the Trusts and their legal counsel in addressing the concerns raised by the CFPB," and, "[f]ollowing lengthy negotiations carried out by the Trusts' counsel with the assistance of BPA, the CFPB" agreed to enter in a consent judgment which avoided costly litigation and significantly reduced penalties initially assessed by the CFPB against the Trusts. Id. Accordingly, at least in another forum, BPA has acknowledged that it had a role in the negotiation of the proposed consent judgment.

As further support for the finding that exceptional circumstances exist which justify transfer of BPA's Motion to Quash, the Court notes that the parties before the undersigned do not

---

[3]BPA has not argued to this Court that BPA's privilege or other objections are based on Florida law.

disagree that the Delaware court is presiding over a complex action. Nor do they dispute that subpoenas have been issued to non-parties in multiple federal districts, that McCarter & English has consented to the transfer of its subpoena-related motion to the issuing court in Delaware, and that another court already has decided that transfer to the issuing court in Delaware is appropriate as to a subpoena issued to a former counsel to the Trusts.[4] See DiCello Levitt & Casey LLC v. Objecting Minority Noteholders, Case No. 19cv252 (E.D. Ill. Feb. 19, 2019) (finding that same issues were likely to arise in discovery in many districts, and that Delaware court already ruled on issues presented in the motion while presiding over this complex litigation, justifying transfer under Rule 45(f)). (ECF No. 16-1)

Nor has BPA demonstrated that the costs of compliance with the subpoena, given the availability of an office in Miami for the Noteholders' taking of testimony of BPA and coordinated electronic production of responsive documents, are greater if the court in Delaware resolves the Motion to Quash.[5] Indeed, BPA claims to "not have any knowledge or documents regarding either of the two threshold issues." (ECF No. 14, at 7) BPA claims the following:

> 1. BPA does not have knowledge regarding whether or not the law firm of McCarter & English had the authority to execute any judgment on behalf of anyone under any set of agreements or applicable law with respect to the Lawsuit;
>
> 2. BPA does not have any documents stating whether or not the law firm of McCarter & English had the authority to execute any judgment on behalf of anyone under any set of agreements or applicable law with respect to the Lawsuit;
>
> 3. BPA does not have knowledge regarding whether - authority aside - it was improper or (in violation of any agreement) [sic] for McCarter & English to enter into any judgment with respect to the Lawsuit; and

---

[4] The Objecting Noteholders report that the law firm of McCarter & English has consented to the transfer to the Delaware court of any motion relating to the subpoena the law firm received, "where it can be adjudicated before Judge Noreika in connection with the CFPB Action." Letter from counsel for insurer Ambac to counsel for McCarter & English LLP, dated February 6, 2019. (ECF No. 15-5)

[5] BPA has not established that it is entitled to have its "attorney's fees, travel expenses and additional costs associated with transfer" of its Motion to Quash paid by the Noteholders.

> 4. BPA does not have any documents stating whether - authority aside - it was improper or (in violation of any agreement) [sic] for McCarter & English to enter into any judgment with respect to the Lawsuit.

ECF No. 1-2, at 11. BPA apparently already has sufficient information to declare that it has no knowledge or documents as described above and BPA has failed to show how the evaluation of its position by the court in Delaware will require BPA to incur additional expense, other than the travel expense for its counsel to appear before the Court.[6] The Advisory Committee Notes specifically state that the court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas," and encourage the issuing court, upon receipt of a transferred motion, to permit appearance by telephone to minimize travel costs to non-parties in these circumstances. "If the motion is transferred, judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties." Fed. R. Civ. P. 45(f), Advisory Committee's Notes (2013).

As observed by United States District Judge Joan Lefkow, the party seeking to avoid transfer to Delaware of its action to quash the subpoena "once was counsel for the trusts in Delaware, reducing the weight of its interest in local resolution." DiCello Levitt & Casey LLC v. Objecting Minority Noteholders, Case No. 19cv252 (E.D. Ill. Feb. 19, 2019). (ECF No. 16-1) Similarly, BPA was engaged in 2015 to perform audits for the Trusts, which diminishes the strength of BPA's argument in favor of needing a Florida resolution to its discovery objections as to the Delaware proceeding. See also, United States v. Roy, No. 18-20898-MC-MOORE/SIMONTON, 2018 WL 1894731 (S.D. Fla. March 21, 2018) (finding exceptional circumstances justified transfer of motion to compel compliance with subpoena issued in Illinois where discovery issues where inextricable from issues at heart of that litigation, and noting that nonparty objecting to transfer had represented Defendant in proceedings in Illinois).

---

[6]BPA argues that the quality of telephone appearances at a court proceeding often is lower than when a party's counsel appears in person, which is an accurate observation in this Court's experience. Such observation does not, however, overcome the showing made by the Noteholders that exceptional circumstances are present.

Because the Court finds that any additional burden on BPA associated with pursuing its Motion to Quash in Delaware will be minimal, the interests of BPA in having its Motion to Quash resolved locally do not outweigh the importance of having the court in Delaware rule on issues which are already before that court, particularly where the same issues are likely to arise, or already have arisen, in discovery in many districts.

### III. CONCLUSION

Having found the exceptional circumstances which permit this Court to transfer a Rule 45 motion to the court which issued the subpoena, and finding that BPA has not demonstrated a basis for finding that its interest in local resolution outweighs those exceptional circumstances, it is

ORDERED AND ADJUDGED that the Expedited Motion to Transfer Motion to Quash Subpoena (ECF No. 7) is GRANTED, and the request for a hearing (at footnote 1 of BPA's Opposition to the Motion to Transfer, ECF No. 14) is DENIED, as moot.

DONE AND ORDERED at Fort Lauderdale, Florida, this 18th day of March, 2019.

*/s/ Lurana S. Snow*
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
 All Counsel of Record